Derek JACKSON, et al., Appellants,

v.

WACO INDEPENDENT SCHOOL DISTRICT, et al., Appellees.

No. 6389.

Court of Appeals of Texas, Waco.

Feb. 18, 1982.

Rehearing Denied March 25, 1982.

John C. Cowley, Waco-McLennan County Legal Aid, Waco, for appellants.

Minor L. Helm, Jr., Nina B. Eldridge, Sleeper, Johnston, Helm, Eldridge & Fontaine, Waco, for appellees.

## OPINION

McDONALD, Chief Justice.

Plaintiffs appeal from judgment of the trial court refusing to find certain WISD school board policies invalid, and denying permanent injunction enjoining enforcement of such policies.

In 1973 the Federal Court for the Western District of Texas ordered a desegregation plan dividing Waco Independent School District into four sectors with designated attendance zones for those living inside each sector. *Arvizu v. WISD*, 373 F.Supp. 1264 (W.D.Tex.1973). The plan was designed to achieve a unitary school system. The plan's designated attendance zones caused the reassignment of many students to different schools. Certain parents, in order to avoid this effect, falsely represented that their children lived with someone who resided in the school zone of desired attendance. Because of the false representations and the need for administrative efficiency, WISD adopted the policies attacked in this case, which allow tuition free attendance to Waco schools only to children of school age who reside with a parent, guardian or managing conservator.

Plaintiffs were notified that WISD would require strict compliance with the admissions policies beginning with the 1980–1981 school year and referred them to the Waco McLennan County Legal Aid for assistance in securing legal compliance with the policy.

The plaintiffs requested the school board to modify the policies so that a court-ordered relationship would not be required for children who did not live with a parent. Instead, they contended they should be given opportunity to show the school district that their presence in a certain area of the school district was not for the primary purpose of attending school. When their request was denied, they brought this action on behalf of all affected by the policy.

Plaintiffs alleged the policy: (1) violated § 21.031 of the Texas Education Code; (2) deprived plaintiffs and the class of equal protection rights as secured by the Texas Constitution and the Fourteenth Amendment to the United States Constitution; (3) infringed upon their fundamental right of familial privacy; and (4) would result in irreparable injury to plaintiffs in the loss of

the benefits of a free public education. Defendants contended the policy was not adopted for the purpose of excluding students or charging tuition but rather so that the WISD personnel would have an objective, non-discriminatory method of determining the proper residence of a student for campus assignment, transportation, disciplinary, medical, athletic, extra-curricular and other legitimate purposes.

At trial before the court the evidence showed and the court found that for the past seven years Derek Jackson and his siblings have resided with their maternal grandmother, at the request and with approval of their mother. The grandmother does not want to be named the legal guardian or managing conservator of the children. The childrens' mother resides in Austin. Under the circumstances of this case, the grandmother could not grant WISD authority to consent to paid medical treatment. The court further found WISD must comply with federal and state regulations in order to receive funds from these sources, has experienced problems enforcing compulsory attendance laws when a child does not live with a parent or legal guardian, must require parental consent forms for school-sponsored excursions away from the school, and does not have staff trained to determine each child's appropriate residence and custody. In addition, the policies were enacted to give administrators guidelines as to whom they can deal with in regard to various school matters involving their students as well as a basis for school assignment under the *Arvizu* desegregation order. They apply to intra-district transfers as well as to inter-district transfers and new students. The effect of the policies has not been to deprive children of attending school in light of the fact that WISD gave a lengthy grace period for compliance and even referred those not in compliance to Legal Aid or private attorneys for aid. If the policies are determined to be illegal, fluctuating school populations would make it impossible to predict enrollment even on a quarterly basis and would destroy the logical enforcement of the desegregation plan. Finally, the court found that al-though payment of the court costs to acquire legal guardianship might be a hardship, it would not be an impossibility; the grandmother's financial burden was not so great as to create constitutional hardships justifying striking down the WISD policy.

The court filed conclusions of law as follows:

"1. Section 23.26 of the Texas Education Code gives the board of trustees of an independent school district the exclusive power to manage and govern the public free schools of the district and empowers them to adopt such rules, regulations and bylaws as they may deem proper.

"2. Although § 21.031 of the Texas Education Code sets out the basic rules with regard to admission of students, the Waco Independent School Board has discretion to adopt attendance and eligibility policies which will allow the School District to operate safely within the ambit of all other state and federal laws and court decisions dealing with public education.

"3. Generally the exercise of a school board's discretion in adopting policies and regulations will not be interfered with by a Court unless there is a clear abuse of discretion on the part of the school board.

"4. Since there is no durational requirement in the residency policy of the Waco Independent School District the constitutional test for examining the WISD policy does not require the extreme scrutiny that would be required in the situation where a durational residency requirement was imposed.

"5. The residency requirement does not constitute an undue hardship on any of the filial relationships or on the freedom to travel and move about. Since there are not time requirements for establishing residency the Court ordered relationship requirements apply to intra- as well as inter-district students and anyone with the requisite Court ordered relationship is free to locate and live where ever they choose.

"6. A judicial determination that the WISD policy is void and unenforceable would conflict with the spirit, intent, and

enforcement of the Court ordered desegregation plan as outlined in *Arvizu vs. WISD* and the constitutional issues involved in the *Arvizu* litigation are superior and paramount over those claimed by the Plaintiffs in this case which militate against any Court's determination that the policies are void.

"7. The WISD's policies constitute a valid exercise of legislative discretion accorded to the board of trustees under the laws of the State of Texas and the Constitution and laws of the United States."

Appellants' 1st point asserts the trial court erred in denying plaintiffs' request that WISD's policy of excluding plaintiffs from its public schools be declared in violation of Texas Education Code, § 21.031. The central issue, they contend is whether WISD has the right and power to require plaintiffs to obtain a court ordered relationship with their custodian before admission to its schools.

Texas Education Code, § 21.031 states in pertinent part:

(b) Every child in this state who is a citizen of the United States or a legally admitted alien and who is over the age of five years and not over the age of 21 years on the first day of September of the year in which admission is sought shall be permitted to attend the public free schools of the district in which he resides or in which his parents, guardian, or the person having lawful control of him resides at the time he applies for admission.

(c) The board of trustees of any public free school district of this state shall admit into the public free schools of the district free of tuition all persons who are either citizens of the United States or legally admitted aliens and who are over five and not over 21 years of age at the beginning of the scholastic year if such person or his parent, guardian or person having lawful control resides within the school district.

(d) In order for a person under the age of 18 years to establish a residence for the purpose of attending the public free schools separate and apart from his parent, guardian, or other person having lawful control of him under an order of a court, it must be established that his presence in the school district is not for the primary purpose of attending the public schools. The board of trustees shall be responsible for determining whether an applicant for admission is a resident of the school district for purposes of attending the public schools.

Appellants assert paragraph (c) is stated so as to insure the right of every child to an education, and that paragraphs (b) and (c) require an interpretation in harmony with the State's established policy to educate all resident children. They further urge paragraph (d) requires the board to allow a child to attend school once the board determines that child is not in the district for the primary purpose of attending school. Finally, appellants urge this court should be guided by the decision of the Commissioner of Education in *Joyner v. Manor ISD*, Docket No. 021–R5–1080. Manor ISD's local policies required Joyner to reside with a parent or legal guardian in order to qualify for tuition-free admission to the Manor ISD schools. Joyner lived with his grandparents. The Commissioner found the policy invalid as inconsistent with the provisions of § 21.031(d) of the Texas Education Code. The State Board of Education denied appeal from this decision and denied a motion to dismiss for mootness.

This court has jurisdiction of the question because the issue of the policy's reasonableness is a question of law. *Wilson v. Abilene ISD*, CCA (Eastland) Er.Ref'd wom, 190 S.W.2d 406; *Board of Trustees of Crystal City ISD v. Briggs*, CCA (Beaumont) NRE, 486 S.W.2d 829, 835. While the Commissioner's decision in *Joyner* carries weight, we are not bound by it. *Board of Adjustment v. Underwood*, CCA (San Antonio) NRE, 332 S.W.2d 583, 585. Also, the Manor ISD was not operating under a desegregation order.

With regard to the authority of school trustees, it is uniformly held the

courts will not interfere in such matters unless there is a clear abuse of power and discretion. *Kissick v. Garland ISD*, CCA (Dallas) NRE, 330 S.W.2d 708, 710.

Education Code § 21.031(d) was enacted in response to litigation regarding the rights of alien children to attend Texas schools. *In Re Alien Children Ed. Litigation,* S.D.Tex., 501 F.Supp. 544, 554–555. It places an affirmative duty on a student who attempts to establish residence, but does not purport to exclude other restrictions by a school district. The second sentence of paragraph (d) expressly gives the board the right and responsibility to set the guidelines for establishing residence within the school district.

Education Code § 23.26 in pertinent part has remained substantially unchanged for over fifty years and provides:

"(b) The Trustees shall have the exclusive power to manage and govern the public free schools of the district...

"(d) The Trustees may adopt such rules, regulations, and bylaws as they may deem proper."

This broad grant of discretionary legislative power has been construed to allow school districts to prescribe specific rules governing teacher and student conduct even though such rules were additional to specific restrictions in the Education Code. See *Bishop v. Houston ISD*, 119 Tex. 403, 29 S.W.2d 312, 313. For example, a school district was allowed to suspend a student for the balance of the school term for a one-time incident of drug overdose even though § 21.301 Education Code authorizes suspension of "incorrigible students." *Fisher v. Burkburnett ISD,* N.D.Tex., 419 F.Supp. 1200.

We believe § 23.26 permitted the school district to make this requirement with regard to residency. WISD must have some method for securing compliance with the federal desegregation order. Furthermore, several laws with which it must comply require the school district to contact a parent or guardian in regard to the education of handicapped children; release of school records regarding achievement tests, grades, etc; compulsory attendance; medical treatment if the parent can be contacted, etc. In addition, the Family Code grants the right of physical possession of a child only to his managing conservator.

Appellants' 1st point is overruled.

In their 2nd, 3rd and 4th points appellants contend there is no evidence and insufficient evidence to support the finding that the policies are necessary for the logical enforcement of the federal court desegregation order. We believe there was ample evidence to support the finding.

The superintendent and child accounting supervisor both testified about the necessity of these policies for the implementation of its desegregation order. Since WISD is divided into quadrants under the *Arvizu* order, the district has to determine residence of students in each quadrant to maintain a proper racial balance under the plan. The superintendent testified that many ruses were used to attempt to get children into schools in a different quadrant than where they actually resided. Some students lived with friends and relatives just to attend a particular school or gave bogus addresses. The child accounting supervisor testified some parents had given him sham guardianship papers in an attempt to circumvent the court's order. In order to comply with the spirit and intent of the court's desegregation order, especially in view of the small staff that the child accounting office has, such policies are necessary. There is sufficient evidence to support the finding. *In re King's Estate*, 150 Tex. 662, 244 S.W. 2d 660.

Appellants' points 2, 3 and 4 are overruled.

AFFIRMED.