746 F.2d 271
 40 Fed.R.Serv.2d 504, 20 Ed. Law Rep. 1082
 Sean Patrick DANIELS and Terry Patrick Daniels, as next
friend for Johanna Kathleen Daniels, Plaintiffs-Appellants,
v.
Frank MORRIS, Individually and as agent of the Arlington
Independent School District, Defendant-Appellee.
 No. 84-1320.
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 12, 1984.
Rehearing Denied Dec. 17, 1984.
 John R. Jensen, Arlington, Tex., for plaintiffs-appellants.
 Chester G. Ball, Arlington, Tex., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Texas.
 Before RUBIN, RANDALL, and TATE, Circuit Judges.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 Two children seek damages under 42 U.S.C. Sec. 1983 because they were not permitted to attend a school located in a district in which they formerly resided but from which their father and they had moved, on the basis that they were not accorded procedural due process before school officials reached the conclusion they could not continue to attend the school they had been attending. The district court held that the children did not have a protected property interest in attending a particular school and had, therefore, no right to notice and hearing, and rendered summary judgment in favor of the defendants. That summary judgment is attacked on the grounds that the judge decided it without oral argument and without giving notice that he would do so on a specific date, that there are disputed issues of material fact, and that the court should have found the students to have a protected property right. We find that the district court did not err procedurally or on the merits, and affirm its judgment, noting the social, legal, and judicial waste occasioned by this attempt to create a federal constitutional issue and to obtain damages in a situation in which there is not even a claim that the father or the school children resided in the school district at the time the children were ordered to withdraw from the school.
 
 
 2
 Summary judgment having been rendered against the plaintiffs, we give the version of facts most sympathetic to their case. Johanna and Sean Daniels, the minor children of Terry Patrick Daniels, registered at Ferguson Junior High School, a school in the Arlington Independent School District. During the school year, Terry Patrick Daniels and his children moved out of the district. The principal of Ferguson Junior High, Frank Morris, upon learning the children no longer resided in the district, ordered Johanna and Sean to withdraw from the school. Later, at Morris' instance, school employees opened Sean's locker and removed his personal belongings. Their father filed this suit as next friend for his two children, alleging that their fourteenth amendment rights to procedural due process had been violated when they were permanently excluded from Ferguson without notice or hearing to determine whether they should have been dismissed for noncompliance with the district's residency requirements. He also claimed that Sean's right to privacy had been violated by the entry into his locker and the "destruction" of the property that had been in it. This suit does not seek to recover the value of the belongings but to recover for an invasion of privacy as a result of the entry.
 
 
 3
 The district court dismissed the claims as patently insubstantial, relying on Raymon v. Alvord Independent School District.[1] In an unreported decision, we reversed, holding that the complaint raised a "not insubstantial question whether ... a property right existed and whether any process was due."[2] We also held that there were factual questions as to whether the district had a policy that required student removal upon a change of residence during the school year and whether the school district treated children who changed their residence during the year differently from children who sought admission as non-residents. These issues precluded dismissal for want of jurisdiction; but, because Daniels had failed to brief the deprivation of privacy issue, we considered that claim abandoned.
 
 
 4
 After remand, the district court found certain facts to be undisputed. The Daniels do not raise any dispute about these facts in the record, and in their present brief they content themselves with this recital: "No Statement of Facts is presented since, as yet, no hearing has been conducted by the district court on this matter." We therefore adopt the district court's statement, because Fed.R.Civ.P. 56(e) provides, "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."
 
 
 5
 The facts not disputed are these: pursuant to state law, the school district allows tuition-free education only for those students who either reside in the district or whose parent, guardian, or person having legal control over them resides there. Although Terry Daniels and his children resided in the district at the beginning of the 1978-79 school year, they moved out of that district and began to reside in the Grand Prairie School District in January, 1979. Because the Daniels did not offer to pay tuition, Johanna and Sean were denied permission to continue attending Ferguson Junior High after the principal discovered that they no longer resided in the district. Before the children were ordered not to attend Ferguson, three district officials met with Daniels, and Morris, the principal, met with Johanna, but they conducted no formal hearing. The children were thereafter enrolled tuition free in a school in the Grand Prairie School District, where they then resided. The district court stated that the narrow issue before it was whether the children had such a protected property interest in a tuition-free education in the Arlington School District (as distinguished from the Grand Prairie School District) that they were entitled to formal notice and a hearing before being directed to attend school in the district where they then resided and being forbidden to attend in a district where they no longer resided.
 
 
 6
 The district court, distinguishing Goss v. Lopez,[3] noted that no disciplinary action had been taken against the children and that the children were afforded a free public education although not in the school of their choice. It concluded that the plaintiffs had "no legitimate claim or entitlement which was deprived without due process." Since this suit was filed, both children have graduated from public school, and the sole question is their claim for damages in being required to attend the Grand Prairie District School to obtain free education.
 
 II.
 
 7
 The Daniels' first argument challenges the summary judgment procedure because they "were not provided notice of the consideration" of the defendants' motion.
 
 
 8
 The motion was not considered precipitately. Soon after it was filed on September 4, 1981, the plaintiffs responded on September 22, 1981. After the district court had dismissed the suit and we reversed and remanded, the defendants filed a supplement to their motion, on May 16, 1983, and a supplemental brief in support of that motion on October 11, 1983. The Daniels, as plaintiffs, filed a supplemental response on December 5, 1983. The defendants then filed a second supplemental brief in support of their motion on February 8, 1984. The court did not schedule oral argument and gave no further notice to the parties, but entered its summary judgment on March 29, 1984. During the interval between the filing of the original motion in late 1981 and the entry of judgment in 1984, the parties had developed the record through various admissions, interrogatories, and depositions.
 
 
 9
 Under Fed.R.Civ.P. 56(c) "the motion [for summary judgment] shall be served at least 10 days before the time fixed for the hearing." This rule does not by implication require the district court to hold an oral hearing. As we have previously interpreted it, the rule requires only that, if there is an oral hearing, there be ten-days advance notice; if there is not a hearing, the adverse party must have at least ten days to respond to the motion for summary judgment.[4] Rule 56(c) does not require that a party be given advance notice of a "date certain" on which a motion for summary judgment is to be decided by the trial court.
 
 
 10
 Language in one of our opinions, Capital Films Corp. v. Charles Fries Productions,[5] supports the Daniels' argument that they were entitled to ten days advance notice of the court's consideration and decision on the motion on March 29, 1984. We said in that opinion: "at no time in the proceedings was [the appellant] given notice that, as of a certain date, the district court would take the case under advisement. Consequently, [the appellant] has been deprived of the safeguards guaranteed by Rule 56." But the words of an opinion are not scriptural admonitions or statutory mandates. We are bound by the rationale of the decision, its ratio decidendi, not its explanatory language. In Capital Films, the trial court had docketed the case for trial prior to granting the summary judgment, and had at one point stated that it was not going to rule on the motion for summary judgment. Thus, the parties were "induced [by the trial court] to believe the case was going to trial."[6]
 
 
 11
 Similarly, in Enochs v. Sisson,[7] we said, "We do not think that the order entered by the court below, in the absence of a notice to the appellant of the time fixed for the hearing, was within its jurisdiction under the quoted portion of rule 56."[8] But the parties in Enochs did not develop the record through affidavits, depositions, and interrogatories. They may simply have thought that the summary judgment motion was a "dead letter."
 
 
 12
 Our decision instead is controlled by Hamman v. Southwestern Gas Pipeline, Inc.,[9] in which this court addressed the same advance-notice argument now raised by Daniels. In Hamman, six months elapsed between the filing of the motion for summary judgment and the district court's grant of the motion. The district court granted the motion without having given express notice that it was taking the case under advisement, following the same local rule applied by the lower court in our case.[10] We held, "these rules put appellants on notice that the district court could decide the motion at any time after 20 days had passed from the time it was filed. Appellants had filed a responsive brief. The requirements of Rule 56(c) were satisfied."[11]
 
 
 13
 The district court here never induced the parties to believe it would not rule on the motion for summary judgment. The summary judgment issues in this case remained at the forefront of the litigation. The parties continued to address it, albeit in fairly leisurely fashion. When, as here, the parties have been given ample opportunity to respond to the motion for summary judgment, the district judge may rule on it even after a significant delay, without giving the parties advance notice of the court's intention to consider and decide the motion on a "date certain."
 
 III.
 
 14
 The Daniels contend that the district court erred in granting summary judgment on the basis of facts not specifically urged as "beyond issue" in Morris' motion for summary judgment. But the district judge is not compelled to limit the basis for a summary judgment to those facts listed in the motion for summary judgment. According to Fed.R.Civ.P. 56(c): "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The judge is free to grant summary judgment on the basis of any facts shown by competent evidence in the record.
 
 IV.
 
 15
 The Daniels children contend they possessed a state created property right to continue attending the Arlington district school even after they moved from that district and established a new residence in the Grand Prairie Independent School District. They rely upon a provision in the Texas Education Code[12] which states that a child "shall be permitted to attend the public free schools of the district in which he resides or in which his parent ... resides at the time he applies for admission." The Daniels maintain that the statute determines their right to attend the school district in which they resided at the beginning of the school year free of tuition for the remainder of the school year. On that premise, they assert that their state-created right to attend the Arlington district school for the duration of the year amounted to a constitutionally protected property interest of which they could not be deprived without the procedural safeguards of prior notice and a formal hearing.
 
 
 16
 In response to our direct inquiry and solicitation of further briefs, the parties have been able to provide us with no cases or regulations directly addressing the issue of whether the Texas statute entitles a child to attend a particular school tuition free for the duration of a school term after a change of residence during the term. The Daniels cite Brownsville Independent School District v. Gamboa,[13] in support of their reading of the statute. In Gamboa, the Texas court held that a child who did not reside within the school district, and whose parent did not reside within that district, was not entitled to admission to the public free school in the district. This holding was based on the fact that "at the beginning of the ... school year the residence status of the ... child was vague and temporary."[14] Although the court referred to the child's residence status at the beginning of the school year, we do not read the opinion to imply that, had the child's residence within the district at the beginning of the year been clearly established, she would have been entitled to attend for the duration of the year even after a change of residence during the term. Gamboa did not address the issue of whether the Texas statute entitles a child to attend a particular school tuition free for the duration of a school term after a change of residence during the term.
 
 
 17
 In the absence of a controlling state interpretation, we resolve the issue by resorting to an approach sanctioned both by judicial precedent and common sense: we look to the words of the statute.
 
 
 18
 The Texas Education Code entitles a student to attend the public school of the district in which the child resides at the time the school year begins and the child registers. It may be read as both a right and a limitation: the child not only may but must register in the school located in his residence district. However, the state statute does not imply either a right or a duty on the part of the student to continue attending that school tuition free even after the child and his parent have left the district and established a residence elsewhere. The obvious purpose of the statute is to ensure that a public school child will attend the free school of the district in which he resides. If he changes his residence during the school term, he is permitted to obtain a free education at the school in the district of his new residence. Nothing in the statute requires the illogical result that a school district must continue to support the tuition free attendance of a child after he has established a new residence in a different district and nothing in it gives the child an option to choose between the schools.
 
 
 19
 Morris, the principal, was implementing school district policy and was violating no state law when he ordered the Daniels children to withdraw from the school. The uncontradicted evidentiary material in the record establishes that, while the written school district policy tracks the language of the Texas Education Code, the school district officials had interpreted local policy as requiring dismissal of children if their residence changed during the school year, and had applied this policy uniformly. The Texas Education Code gives the trustees of a school district "the exclusive power to manage and govern the public free schools of the district" and the power to "adopt such rules, regulations, and by-laws as they may deem proper."[15] Under these provisions, the trustees and officials of the school district have broad discretion in their control and management of the school district, and the Texas courts defer to school district policies and regulations concerning establishment of residence within a district.[16] Texas courts will abrogate school district policies only when they clearly violate statutory provisions.[17] The Arlington School District's year-round residency policy does not, therefore, violate the Texas Education Code or constitute an abuse of the school district's broad discretion to control and manage the school district.
 
 
 20
 For the same reasons, neither the Texas Education Code nor the Arlington School District policy gave the Daniels children an entitlement in the nature of a property right to attend the Arlington district school without tuition after they had changed their residence to the Grand Prairie district. Since the children possessed no state created property interest in attending the Arlington school at the time of their dismissal, the principal's action in ordering their withdrawal was not subject to the procedural strictures of the due process clause.[18]
 
 
 21
 Indeed, the Daniels have not established what they would have shown or how they would have benefitted from a pre-dismissal hearing. They do not contend a pre-dismissal hearing would have provided them a forum to argue that the dismissal would violate state law or school district policy. They maintain only that a pre-dismissal hearing would have enabled them to explain the facts and circumstances underlying their "temporary" move and to seek the resolution of any questions that had arisen as a result. However, the Daniels have apparently stipulated that they changed their residence in January, 1979. This change of residence alone invokes the school district's dismissal policy.
 
 
 22
 The Daniels also claim that Sean Daniels' right to privacy was violated by the school officials' entry into his locker and seizure of his personal belongings. In the opinion remanding the case after it was dismissed on the pleadings as patently insubstantial, the panel found that this issue had been waived on appeal for failure to brief it. We are bound by that panel's holding.
 
 
 23
 For these reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 639 F.2d 257 (5th Cir.1981)
 
 
 [2]
 Daniels v. Morris, 683 F.2d 1371 (5th Cir.1982)
 
 
 [3]
 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)
 
 
 [4]
 Hamman v. Southwestern Gas Pipeline, Inc., 721 F.2d 140, 142 (5th Cir.1983) ("We have previously interpreted the language of this rule [FRCP 56(c) ] as requiring notice to an adverse party and a hearing. Kibort v. Hampton, 538 F.2d 90, 91 (5th Cir.1976). Such a 'hearing,' however, need not necessarily be an oral one. Rather, the rule contemplates ten days advance notice to the adverse party that the matter will be taken under advisement as of a certain day."). See U.S.Dist.Ct.Rules N.D.Tex., General Rule 5.1 (e, f); Fed.R.Civ.P. 78 (2d para)
 
 
 [5]
 628 F.2d 387 (5th Cir.1980)
 
 
 [6]
 Id. at 391
 
 
 [7]
 301 F.2d 125 (5th Cir.1962)
 
 
 [8]
 Id. at 126
 
 
 [9]
 721 F.2d 140 (5th Cir.1983). Accord Brumley Estate v. Iowa Beef Processors, Inc., 704 F.2d 1351, 1359 n. 1 (5th Cir.1983). See also Barker v. Norman, 651 F.2d 1107, 1119 (5th Cir.1981) (one and one-half years elapsed between filing of motion for summary judgment and the district court's grant of the motion); Erco Industries Ltd. v. Seaboard Coast Line R. Co., 644 F.2d 424, 431 (5th Cir.1981); Daly v. Sprague, 675 F.2d 716, 730 (5th Cir.1982); Howell v. Tanner, 650 F.2d 610, 614 (5th Cir.1981)
 
 
 [10]
 N.D.Tex.R. 5.1(e): "any response to a motion shall be filed within 20 days from the date of filing of the motion."
 
 
 [11]
 Id. at 142
 
 
 [12]
 Sec. 21.031(b)
 
 
 [13]
 498 S.W.2d 448 (Tex.Civ.App.--Corpus Christi 1973)
 
 
 [14]
 Id. at 451
 
 
 [15]
 Texas Education Code Sec. 23.26
 
 
 [16]
 See Jackson v. Waco Independent School Dist., 629 S.W.2d 201 (Tex.Civil App.--Waco 1982); Rodriguez v. Ysleta Independent School District, 663 S.W.2d 547 (Texas Civil App.--El Paso 1983)
 
 
 [17]
 See Anderson v. Canyon Independent School Dist., 412 S.W.2d 387 (Tex.Civil App.--Amarillo 1967); Harlingen Indep. School Dist. v. C.H. Page and Bro., 48 S.W.2d 983 (Ct.App.1932)
 
 
 [18]
 See, e.g., Goss v. Lopez, 419 U.S. 565, 572, 95 S.Ct. 729, 735, 42 L.Ed.2d 725, 733 (1975) ("Protected interests in property are normally 'not created by the Constitution. Rather, they are created and their dimensions are defined' by an independent source such as state statutes or rules entitling the citizen to certain benefits." (Quoting Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972))