**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 01-41441
(Summary Calendar)

_____

WILLIAM S. HANCE,

Plaintiff-Appellant,

versus

HEMELGARN ENTERPRISES, INCORPORATED,
doing business as Hemelgarn Racing Inc.,

Defendant-Appellee.

_____

Appeal from United States District Court
for the Southern District of Texas
(G-00-CV-616)

_____

October 10, 2002

Before JOLLY, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

Plaintiff William Steve Hance ("Hance") filed a breach of contract claim against Defendant

Hemelgarn Enterprises, Incorporated d/b/a Hemelgarn Racing Inc. ("Hemelgarn") seeking monetary

damages for a finder's fee allegedly owed him. Hemelgarn filed a summary judgment motion

pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. During a docket call, the district

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

court judge requested from Hance, a response to the summary judgment motion due within two days of the docket call and within five days of the scheduled trial. After Hance filed his response, the district court entered a judgment for Hemelgarn. The issues raised on appeal are (1) whether the district court erred in shortening the time to file a response to the summary judgment motion pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, and (2) whether the district court properly granted the motion for summary judgment. For the reasons that follow, we AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

Hemelgarn operates health and fitness clubs and owns and races cars on a racing circuit that includes the Indianapolis 500. Hemelgarn was seeking sponsors for his Indianapolis 500 racing team. In June 1996, Ron Hemelgarn, president of Hemelgarn Enterprises, and Hance entered into a written finder fee agreement stating in total:

> Dear Steve [Hance]: Hemelgarn Racing, Inc. agrees to pay 10% finder fee for any sponsors brought in by you after receipt of payment from sponsors. Sincerely, Ron Hemelgarn.

Shortly thereafter, Hance introduced Paul M. Monea ("Monea") to Ron Hemelgarn. Monea is the owner and operator of Universal Management Services, Inc., which promoted and sold a product called "The Stimulator." Monea is also president of NCP Marketing Inc. d/b/a TAE-BO. In August, 1996, Hance and Monea entered into a sponsorship agreement to promote and advertise Universal's name and "The Stimulator" logo on, *inter alia,* Hemelgarn's racing cars, helmets, and jackets. Monea guaranteed Hemelgarn royalty payments of $250,000 payable monthly over a year.

2

Consequently, Hemelgarn paid Hance the agreed upon 10% finder fee as Hemelgarn received payments from Monea. It is undisputed that the finder fee agreement covered this initial introduction and subsequent transaction between Monea and Hemelgarn to promote "The Stimulator."

The present contract dispute stems from the second sponsorship transaction between Monea and Hemelgarn which took place in February 1999. Monea agreed to promote TAE-BO through a sponsorship of Hemelgarn's Indianapolis 500 racing team. This agreement was renewed in March 2000 and again in March 2001. Through the promotion of TAE-BO, Monea's sponsorship of Hemelgarn's racing team totaled payments of $1.25 million for 1999, 2000, and 2001 to Hemelgarn. Hance contends that Hemelgarn breached the finder fee agreement when he did not pay Hance 10% of the payments that came out of the 1999, 2000, and 2001 TAE-BO transactions. Hance sued in the Southern District of Texas seeking monetary damages for breach of the finder fee agreement.

On October 31, 2001, Hemelgarn filed a motion for summary judgment in the district court and mailed a certified copy of the motion to Hance. At the docket call on November 6, 2001, the district court set the trial date for November 13, 2001, denied the parties' motion to continue the trial, and requested a response to the motion for summary judgment from Hance due by Thursday, November 8, 2002. On November 8, 2002 Hance filed a response to the motion for summary judgment and an objection to the district court's deadline for the response. On November 9, 2002 the district court entered a judgment granting Hemelgarn's motion for summary judgment dismissing Hance's claims with prejudice. Hance contends that pursuant to Rules 6(a), 6(e), and 56(c) of the Federal Rules of Civil Procedure, the district court erred in shortening his time to prepare a summary judgment motion response from ten days to two days. Hance also contends that because there are

3

genuine issues of material fact the district court erred in granting Hemelgarn's summary judgment motion. This appeal follows.

## DISCUSSION

1.       Time To Respond To The Summary Judgment Motion

During the November 6, 2002 docket call, the district court requested a response to Hemelgarn's summary judgment motion due two days later on November 8, 2002 and six days after Hemelgarn filed his motion. Hance contends that the district court erred and violated the statutory time of ten days allotted to file a response to a summary judgment motion under Rule 56(c) of the Federal Rules of Civil Procedure. This Court has interpreted Rule 56(c) such that "if there is not a hearing, the adverse party *must have at least ten days to respond* to the motion for summary judgment." Daniels v. Morris, 746 F.2d 271, 274-75 (5th Cir. 1984) (emphasis added). In the present case, the district court did not grant a hearing on the summary judgment motion; thus, Hance was entitled to ten days to respond to Hemelgarn's summary judgment motion. The district court erred.

If the district court does not provide adequate "opportunity to respond akin to that required by Fed.R.Civ.P. 56(c) ... we will reverse the grant unless the error is harmless." Mannesman Demag Corp. v. M/V Concert Express, 225 F.3d 587, 595 (5th Cir. 2000). The district court's error is harmless if the error did not affect Hance's substantial rights. FED.R.CIV.P. 61. "When no substantive prejudice results from an erroneous ruling, the error is harmless." Howard v. Gonzales, 658 F.2d 352, 357 (5th Cir. 1981). In order to determine whether the district court's error shortening Hance's time to respond to the summary judgment motion caused prejudice to his claim, we must determine whether the district court misled Hance and "induced prejudicial inaction." Prudhomme v. Tenneco Oil Co., 955 F.2d 390, 395 (5th Cir. 1992) (citing Daniels, 746 F.2d at 274-76; see Guillory v.

4

Domtar Indus. Inc., 95 F.3d 1320, 1328 (5th Cir. 1996) (analyzing whether granting a summary judgment motion close to the date of trial constitutes Prudhomme court-induced prejudice).

In this case, Hance does not assert that the district court's shortening of his statutorily allotted time to respond to Hemelgarn's motion for summary judgment induced prejudicial inaction. Rather, Hance's only contention is that an unrelated "untoward episode" between Hance's trial counsel and a security staff member in the district courthouse caused the district court to be prejudiced against Hance's trial counsel. In Prudhomme, this Court determined that the district court's *sua sponte* addition of a strict liability action the morning of trial was "inextricably intertwined with the issue of [the plaintiff's] strict liability" claim so as to "induce prejudicial inaction," 955 F.3d at 395. In contrast, the district court's action in this case was not "inextricably intertwined with" Hance's breach of contract claim so as to "induce prejudicial inaction." Indeed, Hance filed a response to Hemelgarn's motion for summary judgment attaching nine exhibits including the relevant contracts and the depositions of key witnesses. Although the district court erred by not affording Hance the required statutory time to file a response to Hemelgarn's summary judgment motion, the court's action was not "inextricably intertwined" with Hance's breach of contract claim and did not "induce prejudicial inaction" on the part of Hance.

Although this Court has strictly enforced the ten day notice requirement, in the summary judgment context, "the failure to provide notice may be harmless error ... when the nonmovant has *no* additional evidence *or* if all of the nonmovant's additional evidence is reviewed by the appellate court and none of the evidence presents a genuine issue of material fact." Love v. Nat'l Med. Enterprises, 230 F.3d 765, 771 (5th Cir. 2000) (emphasis in original) (internal quotations and citations omitted). In this case, Hance did not put forth evidence that genuine issues of material fact

remain, and that as a matter of law, Hemelgarn was not entitled to summary judgment. Upon our *de novo* review of Hemelgarn's summary judgment motion that follows, we find that the district court's error was harmless.

2.      The Summary Judgment Motion

This Court reviews the district court's order granting summary judgement *de novo,* applying the same standard as the district court. Commerce & Indus. Ins. Co. v. Grinnel Corp., 280 F.3d 566, 570 (5th Cir. 2002). Summary judgment is only appropriate when there are no genuine issues of material fact and, as a matter of law, the moving party is entitled to summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). We review the underlying facts of the summary judgment motion in the light most favorable to the nonmoving party. Id. at 599.

"We look to state law to provide the rules of contract interpretation." Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc., 88 F.3d 347, 352 (5th Cir. 1996) cert. denied, 519 U.S. 1078 (1997). Under Texas law, "[w]hen the contract is worded so that it can be given a certain or definite legal meaning it is not ambiguous and the court will construe the contract as a matter of law." The Gulf Ins. Co & Select Ins. Co. v. Burns Motors Inc., 22 S.W.3d 417, 424 (Tex. 2000) (citing Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983)). However, "[a]n ambiguity does not arise simply because the parties advance conflicting interpretations of the contract; for an ambiguity to exist both interpretations must be reasonable." Wal-Mart Stores Inc., v. Harry W. Sturges, III, 52 S.W.3d 711, 728 (Tex. 2001). In the present case, "we must determine whether there is more than one reasonable interpretation of this contract such that a fact issue was created concerning the parties' intent."

Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996) (reviewing whether the language of a pricing provision in a contract was ambiguous). The contract in this case presents no such ambiguity.

Hance contends that the district court's use of the Webster's New Collegiate Dictionary to discern the plain and ordinary meaning of the words in the contract was arbitrarily selective when it construed the terms of the contract to require that Hance take an active role in the 1999, 2000, and 2001 transactions between Monea and Hemelgarn in order to receive the finder fee. Hance advances an alternative interpretation of the plain and ordinary language of the contract and contends that the district court ignored the parties' actual course of performance. Under Hance's interpretation, Hemelgarn's payment of a finder fee to Hance for the 1996 Stimulator sponsorship established a course of performance that entitles Hance to a finder fee for the 1999, 2000, and 2001 TAE-BO sponsorships. Although Hance presents an alternative interpretation of the contract, this interpretation is not reasonable, and therefore the contract is not rendered ambiguous.

The district court analyzed the language of the contract by giving the words of the contract their plain and ordinary meaning so as to not defeat the parties' intent. See DeWitt County Elec. Co-op., Inc. v. Parks, 1 S.W.3d 96, 101 (Tex. 1999). Relying on the Webster's New Collegiate Dictionary's definition of "brought in," the district court correctly found that the term cannot reasonably be construed to include "introducing two businessmen three years prior to the sponsorship at issue." Thus, Hance's proposed interpretation of the contract is unreasonable because Hance had no connection whatsoever to the TAE-BO sponsorship agreements with Hemelgarn.

Further, the term "finder" has a legal meaning which renders this contract unambiguous. Under Texas law, a "finder" is defined as "an intermediary who contracts to find and bring parties

7

together, but he leaves the ultimate transaction to the principals; he is the procuring cause, and his function ceases when the negotiations between the principals begin." Vero Group v. ISS-International Serv. Sys., 971 F.2d 1178, 1187 (5th Cir. 1992) (quoting Rogers v. Ellsworth, 501 S.W.2d 756, 757 (Tex. App.1973)). This definition of "finder" and the circumstances presented in Vero Group are instructional to the analysis in this case. In Vero Group, the plaintiff sued ISS for breach of a finder fee agreement where the plaintiff was to be compensated when acquisition of the referred company was consummated. The plaintiff referred to ISS, ADT Maintenance, which ISS subsequently acquired. In a letter to ISS, the plaintiff then referred, Mediclean, a subsidiary of ADT Maintenance which was subsequently contacted by ISS and acquired. Vero Group, 971 F.2d at 1180-81. Notwithstanding that Mediclean was a subsidiary of ADT Maintenance, the plaintiff actively introduced ISS to Mediclean before ISS acquired it. Id. In this case, Hance made the initial introduction which led to "The Stimulator" sponsorship of Hemelgarn's racing team. Unlike the situation in Vero Group, however, Hemelgarn and Monea independently consummated the TAE-BO sponsorship three years later. By Hance's own deposition testimony, Hance did not introduce or suggest the idea that TAE-BO sponsor Hemelgarn's racing team.

In light of Vero Group, we agree with the district court that there are no genuine issues of material fact. Hance was an intermediary who found and brought Monea and Hemelgarn together but left the ultimate negotiations for The Stimulator sponsorship of Hemelgarn's racing team to the principals; he was the procuring cause, and Hance's function ceased when the negotiations between the principals began. See Id, 971 F.2d at 1187. It would be unreasonable to conclude that some three years after the initial transaction, the one sentence finder fee agreement would extend to an independent negotiation between Hemelgarn and Monea for TAE-BO sponsorship of Hemelgarn's

racing team. Interpreting the language of the contract in any other way would be unreasonable. Construing the facts in the light most favorable to Hance, there are no genuine issues of material fact to overcome the district court's grant of Hemelgarn's summary judgment motion.

## CONCLUSION

Accordingly, for the reasons stated herein, we AFFIRM the district court's judgment.

AFFIRMED