

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00544-CV

**IN RE** Laura L. **HITA**

Original Proceeding[1]

PER CURIAM

Sitting:    Irene Rios, Justice
            Lori I. Valenzuela, Justice
            Adrian A. Spears, II, Justice

Delivered and Filed: May 14, 2025

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

Relator, Laura L. Hita, filed a petition for writ of mandamus seeking to vacate an August 14, 2024 trial court order compelling her to enroll her children in public schools outside of the school district in which they currently reside. The real party in interest, the children's father, filed a response to the petition for writ of mandamus. For the reasons set forth more fully below, we conditionally grant the petition.

### BACKGROUND

Relator, Laura L. Hita, and Real Party in Interest, Daniel Ortiz, are the parents of minor children, A.J.O., J.D.O., and L.F.O. (collectively "the children"). Relator and real party in interest divorced on August 12, 2019. Relator and real party in interest were designated joint managing

---

[1]This proceeding arises out of Cause No. 2019-CI-00334, styled *In the Interest of M.D.O., A.J.O. J.D.O., and L.F.O., Children*, pending in the 45th Judicial District Court, Bexar County, Texas, the Honorable Mary Lou Alvarez presiding.

conservators in the final decree of divorce. Relator was designated as the conservator with "the exclusive right to designate the primary residence of the children" with the restriction that she "maintain the children's primary residence in Bexar or any contiguous county." Relator was also granted "the right to make decisions concerning the children's education." Relator's right to make decisions concerning the children's education was not unfettered, but rather relator was required "to confer with [real party in interest] before making a decision concerning the health, education, and welfare of the children." The order provided no guidance regarding the degree of conference necessary prior to making such a decision.

At the time the final decree of divorce was issued, relator and her children lived within North East Independent School District ("NEISD"). In December 2023, relator moved with the children to a new home located in Medina Valley Independent School District ("MVISD"), approximately 40 minutes from the children's schools in NEISD. Relator complied with the requirements of the final decree of divorce to advise real party in interest of her and the children's move. Relator elected to keep the children enrolled in NEISD for the remainder of the school year. Relator apparently drove her children 40 minutes each way daily to enable them to complete the 2023-24 school year at the schools they had been attending. Relator began the process of enrolling them in MVISD in June 2024, after the children's school year had ended and the children were no longer enrolled in classes.

On April 11, 2024, after relator and the children had relocated from their home within NEISD to a new home in MVISD, but before relator began the enrollment process for the children in MVISD, real party in interest filed a petition to modify (a.k.a. a Suit Affecting the Parent Child Relationship "SAPCR") seeking greater control regarding the children, including seeking to be named the conservator with the exclusive right to designate the primary residence of the children.

Bexar County District Courts have adopted a standing order that takes effect whenever a SAPCR is filed ("SAPCR Standing Order"). The SAPCR Standing Order has several pertinent clauses. The introduction provides in part:

> **This Order is not intended to affect or circumvent prior orders entered regarding conservatorship of children, including the right to determine the primary residence of a child and all prior orders remain in effect until further order of the Court.** The Civil District Courts of Bexar County have adopted this order because the parties and their child(ren) should be protected and their property preserved while the lawsuit is pending before the Court. (bold in original)

It also provides several restrictions regarding disruption of the children, including:

> Both parties are ORDERED to refrain from doing the following acts concerning any child(ren) who are subjects of this case:…2.2. Disrupting or withdrawing the child(ren) from the school or day-care facility where the child(ren) are **presently enrolled**, without the written agreement of both parents or an order of this Court. (emphasis added).

On June 25, 2024, relator and real party in interest attended a mediation in hopes of resolving their disputes. There, real party in interest and his counsel "discovered that the children were withdrawn from the school[s they had previously attended]."

Real party in interest filed a motion for enforcement of standing orders on July 25, 2024. The motion for enforcement alleged that "**[a]pproximately June 2024**, [relator] **disenrolled** the children from their schools they had been attending for the previous several years." (emphasis added). The motion for enforcement specifically named the high school, middle school, and elementary school within NEISD where the children were enrolled during the 2023-2024 academic school year. It did not aver or provide evidence that any of the children were presently enrolled or attending classes at those schools in June or July 2024, nor did it aver or provide evidence that any of the children were eligible to enroll or attend classes at their prior schools in the upcoming school year following their relocation to MVISD.

On August 14, 2024, the trial court held a hearing on the motion for enforcement. It heard arguments but did not take evidence. Counsel for real party in interest could not confirm that any child was eligible to be enrolled in their prior school. Although no evidence was introduced that the children remained eligible to enroll in their former schools and despite acknowledging that it did not know whether either parent could establish residency in the district, the respondent granted the motion to enforce specifically ordering "to have the children enrolled into the school where they attended as of 4/11/24. For the child that finished elementary school, she is to be enrolled in the school where her older siblings attended."

Relator immediately filed this petition for mandamus and an emergency motion for stay. Two days after the trial court's oral order, this court granted the motion for emergency relief and stayed the trial court's ruling on the motion for enforcement. No written order was ultimately entered by the trial court. The parties have fully briefed the matter and resolution of the underlying petition to modify remains pending in district court.

## DISCUSSION

### a. Mandamus Standard

"[M]andamus relief is appropriate if the relator establishes a clear abuse of discretion for which there is no adequate appellate remedy." *In re Durnin*, 619 S.W.3d 250, 252 (Tex. 2021) (orig. proceeding). The burden is on the relator to provide a sufficient record showing they are entitled to mandamus relief. *Walker v. Packer*, 827 S.W.2d 833, 837 (Tex. 1992). A mandamus petition must include, as part of an appendix, "a certified or sworn copy of any order complained of, or any other document showing the matter complained of." TEX. R. APP. P. 52.3(k)(1)(B). While we do not encourage parties to file mandamus actions based upon a trial court's oral pronouncements, we recognize Texas courts, including this court, have interpreted this rule to permit mandamus relief based upon an oral ruling that is shown by the reporter's record. *See In re*

*Bustos*, No. 04-14-00755-CV, 2014 WL 7339259, at *3 (Tex. App.—San Antonio Dec. 23, 2014, orig. proceeding) (conditionally granting mandamus relief and ordering the trial court to withdraw its oral orders modifying conservatorship and possession and access in a family law case); *In re Bledsoe*, 41 S.W.3d 807, 811 (Tex. App.—Fort Worth 2001, orig. proceeding) (concluding "rule 52.3(j)(1)(A) allows consideration of an oral order if the court's ruling is a clear, specific, and enforceable order that is adequately shown by the record.").

Mandamus relief is proper only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no adequate remedy by appeal. *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 207 (Tex. 2009) (orig. proceeding).

A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 888 (Tex. 2010) (orig. proceeding); *Walker*, 827 S.W.2d at 839. We may not substitute our judgment for that of the trial court in the resolution of factual matters unless the relator establishes that the trial court could have reasonably only reached one decision and that the trial court's decision is arbitrary and unreasonable. *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig. proceeding); *Walker*, 827 S.W.2d at 839–40. In other words, we give deference to a trial court's factual determinations that are supported by evidence, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

Because a trial court's temporary orders are not appealable, mandamus is an appropriate means to challenge them. *See In re Derzapf*, 219 S.W.3d 327, 334–35 (Tex. 2007) (orig. proceeding); *In re Russell*, 321 S.W.3d 846, 853 (Tex. App.-Fort Worth 2010, orig. proceeding).

**b. The trial court's order violates the SAPCR Standing Order and Texas law.**

The SAPCR Standing Order explains that it "is not intended to affect or circumvent prior orders entered regarding conservatorship of children, including the right to determine the primary residence of a child and all prior orders remain in effect until further order of the Court." This provision is intended to effectuate Section 156.006 of the Texas Family Code, which provides:

> While a suit for modification is pending, the court may not render a temporary order that **has the effect of** creating a designation, or changing the designation, of the person who has the exclusive right to designate the primary residence of the child, or **the effect of** creating a geographic area, or changing or eliminating the geographic area, within which a conservator must maintain the child's primary residence, under the final order unless the temporary order is in the best interest of the child and:
>
> (1) the order is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development;
>
> (2) the person designated in the final order has voluntarily relinquished the primary care and possession of the child for more than six months; or
>
> (3) the child is 12 years of age or older and has expressed to the court in chambers as provided by Section 153.009 the name of the person who is the child's preference to have the exclusive right to designate the primary residence of the child.

TEX. FAM. CODE ANN. § 156.006(b) (emphasis added).

Under Texas law, the right to establish a child's primary residence is closely connected with the right to designate school enrollment. *In re C.R.*, No. 04-21-00393-CV, 2021 WL 6127884, at *5 (Tex. App.—San Antonio Dec. 29, 2021, orig. proceeding). As this court has explained, "[o]ne of the two reasons to designate a child's primary residence, either by use of a geographic restriction or by giving one parent the exclusive right to designate primary residence, is to determine the child's residency for purposes of public school enrollment." *Id.*; *see In Interest of W.B.B.*, No. 05-17-00384-CV, 2018 WL 3434588, at *3 (Tex. App.—Dallas July 17, 2018, orig.

proceeding) ("Designating a primary residence is necessary for two reasons: to determine residency for purposes of public school enrollment and as a significant factor in the power of relocation."); *see also In re Cole*, No. 03–14–00458–CV, 2014 WL 3893055, at *3 (Tex. App.–Austin Aug. 8, 2014, orig. proceeding) (mem. op.) (noting that "by designating the child's 'primary residence,' the person with the right to do so has also identified in which public school the child has the right to enroll," but also cautioning against the conclusion that "the person with the exclusive right to designate the child's residence also necessarily has the exclusive right to choose the public school the child will attend"); *Doncer v. Dickerson*, 81 S.W.3d 349, 361 (Tex. App.—El Paso 2002, no pet.) ("[O]ne parent must have the ability to determine residency for purposes of public school enrollment if the parents reside in different districts."). It is within this context that we have held that a temporary order requiring a child to enroll in a school district located outside of his district of primary residence had the effect of changing the child's primary residence provided by a final decree of divorce in violation of § 156.006(b). *In re C.R.*, 2021 WL 6127884, at *5; *see also In re S.M.D.*, 329 S.W.3d 8, 22 (Tex. App.—San Antonio 2010, orig. proceeding) ("We perceive the purpose of imposing a geographic residency restriction is to ensure those who have rights to possession of the child are able to effectively exercise such rights.").

Other courts have also found that temporary orders compelling children involved in a SAPCR to attend schools outside of their district of residence had the practical effect of violating § 156.006(b). *See In re J.W.*, No. 02-18-00419-CV, 2019 WL 2223216, at *4 (Tex. App.—Fort Worth May 23, 2019, orig. proceeding) ("[B]ecause the orders dictate that the children must attend a specific elementary school in Keller ISD, they have the effect of creating a geographic area in which Father must maintain the children's residence because they create a geographic limitation…."); *In re Ostrofsky*, 112 S.W.3d 925, 929 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (temporary order requiring children to attend boarding school deprived parent of

exclusive right to determine the children's primary residence); *In re Strickland*, 358 S.W.3d 818, 821 (Tex. App.—Fort Worth 2012, orig. proceeding) ("A temporary order that deprives a custodial parent of any discretion inherent in the right to determine the child's primary residence has the effect of changing the designation of the person with the exclusive right to designate the child's primary residence.").

Turning to the present case, the final decree of divorce clearly and unequivocally designated relator as the person with the exclusive right to designate the primary residence of the children. Relator relocated the children to a new residence outside of NEISD in a contiguous county in apparent compliance with the final divorce decree. Relator's new residence is approximately a 40-minute drive from the schools the children had been attending. The practical effect of the trial court's challenged order is to create a geographic area within which relator must establish her children's residence or change the designation of the parent with the exclusive right to establish the children's primary residence. It is immaterial whether real party in interest, the children's father, presently lives in NEISD. Such residency may allow the children to enroll in NEISD and their former schools, but it does not enable them to actually attend such schools while continuing to reside with relator, the parent with the exclusive right to designate their primary residence.

Having determined that the trial court's order has the practical effect of establishing a geographical limitation on relator's exclusive right to designate the children's primary residence, we must consider whether one of the three exceptions applies. *See* TEX. FAM. CODE ANN. § 156.006(b)(1)-(3). The trial court performed no inquiry and made no findings regarding the best interests of the children or whether the order was necessary to protect the children's physical health or emotional development, whether relator had relinquished primary care and possession of the children for more than six months, or whether the children wanted real party in interest to be the

parent with the exclusive right to designate their primary residence. None of the section 156.006(b)(1)-(3) exceptions have been satisfied to permit an order impacting relator's right to establish the children's primary residence.

### c. Relator did not violate the SAPCR Standing Order

The SAPCR Standing Order prohibits either parent from "**[d]isrupting** or **withdrawing** the child(ren) from the school or day-care facility where the child(ren) are **presently enrolled**, without the written agreement of both parents or an order of this Court." (emphasis added). Neither the term "withdraw" nor "disrupt" is defined in Title 2 of the Education Code, but their meanings can be readily ascertained through the rules of grammar, common usage, and their usage throughout Title 2. *See* TEX. GOV'T CODE ANN. § 311.011 (providing for the interpretation of undefined common and technical words and phrases).

The terms "disrupt" and "withdraw" as commonly used and understood within the context of public-school education clearly contemplate children currently enrolled in courses – that is, during a semester. *See e.g.* TEX. EDUC. CODE ANN. § 31.104(c) (requiring students to return all instructional materials "at the end of the school year or when the student withdraws from school."); TEX. EDUC. CODE ANN. § 7.111(b) (prohibiting the state board of education from requiring a waiting period between the date a person "withdraws" from school and the date the person is eligible to take a high school equivalency exam); TEX. EDUC. CODE ANN. § 37.009(i) (providing district powers when a student "withdraws" from a school district before the district can take certain disciplinary actions); *see also Daniels v. Morris*, 746 F.2d 271, 273 (5th Cir. 1984) (holding a school district may order students that no longer reside in the district to withdraw from school during a semester).

The alternative interpretation of the clause would have detrimental unintended consequences. For instance, children would not be permitted to advance from day-care to

kindergarten or elementary school to middle school without court intervention or parental cooperation. In the present case, L.F.O. was not ordered to attend the school where she was previously enrolled, but rather ordered to attend a different school because of her age.

Here, no evidence was introduced that the children were presently enrolled in school, i.e. taking courses, when relator began the process of enrolling the children in their residential school district. Similarly, relator cannot be said to have disrupted the children's schooling as they were not presently enrolled in any courses. Given that relator began the process of enrolling the children in MVISD during their summer break, it cannot be found that she violated the SAPCR Standing Order's prohibition on disrupting or withdrawing the children from the schools in which they were presently enrolled.

## CONCLUSION

We conclude that the trial court abused its discretion by ordering that the children be enrolled in schools located outside the school district they reside in as established by the conservator with the exclusive right to establish their primary residence. We conditionally grant this mandamus petition and direct the trial court to vacate its August 14, 2024 order no later than fifteen days from the date of this opinion. The writ will issue only in the unlikely event that the trial court fails to comply with our directive.

PER CURIAM