[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-16052
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 15, 2010
JOHN LEY
CLERK

D. C. Docket No. 09-00400-CV-ORL-31-KRS

DAVID AZAR,

Plaintiff-Appellant,

versus

NATIONAL CITY BANK,
Successors, Assigns and all Claimants,
Person or Parties, natural or corporate,
or whose exact legal status is unknown,
claiming under the above named
Defendant now known as Harbor
Federal Savings Bank,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 15, 2010)

Before TJOFLAT, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

David Azar ("Azar"), a licensed attorney proceeding pro se, appeals the dismissal under Federal Rule of Civil Procedure 12(b)(6) of his claims against National City Bank ("National City") for fraudulent inducement and negligent misrepresentation. He also appeals the award of attorneys' fees and costs to National City. Upon review of the record and the parties' briefs, we AFFIRM.

## I. BACKGROUND

We state the facts as alleged in Azar's second amended complaint.[1] Between 2002 and 2007, Azar opened several bank accounts for his local businesses at National City and its predecessor, Harbor Federal Savings Bank,[2] in Indialantic, Florida. R2-64 at 2. Azar met with the local branch manager, Gloria Olsen ("Olsen"), and a mortgage loan officer named Chris Graham ("Graham"), on numerous occasions during this time. Id. In 2005, Azar consulted with Olsen about financing the purchase of a single-family investment property for $240,000. Id. at 3. After reviewing his tax returns and checking his credit, Olsen suggested he borrow $192,000 as a mortgage on the investment property and take a $75,000

---

[1] Azar filed his initial complaint in state court in January 2009. R1-2. Pursuant to National City's request, the case was removed in March 2009 to the United States District Court for the Middle District of Florida based on diversity jurisdiction. R1-1; R1-2.

[2] National City acquired Harbor Federal Savings Bank in 2006. R2-64 at 2.

equity loan on his personal residence.  Id.  At the time, Azar already had a

$230,000 mortgage on his home.  Id.

In January 2006, in an effort to reduce his monthly payments, Azar

refinanced his mortgages on his own residence by combining his $230,000

mortgage loan with the $75,000 equity line, for a new mortgage of $329,600.  Id.

at 4.  Due to the slow economy, however, Azar's businesses faltered and he had

difficulty paying his mortgage.  Id.  Azar again turned to Olsen for a home equity

loan.  Id. at 5.  After an appraisal of Azar's residence, Olsen approved an

additional $36,500 home equity loan in June 2007.  Id.  Since October 2008, Azar

has not made any payments on either the $329,600 mortgage loan or the $36,500

home equity loan.  Id.

Azar sued National City in 2009 seeking to restructure the principal and

terms of his mortgage, and/or rescind and cancel his mortgage, and enjoin National

City from instituting foreclosure proceedings.  Id. at 8-16.  His second amended

complaint raised six counts:  (1) fraud; (2) fraudulent inducement; (3) fraudulent

misrepresentation; (4) negligence; (5) breach of fiduciary duty and failure to

disclose; and (6) injunctive relief.  Id. at 7-15.  Azar asserted that "a confidential

and trusting relationship" existed between him and National City's employees, and

that he had trusted National City "to make good and proper decisions" regarding

3

the mortgage loans. Id. at 2-3. Furthermore, Azar alleged in counts one through three that National City employees had intentionally falsified his income without his knowledge to secure the 2006 and 2007 loans. Id. at 7-11. In addition to injunctive relief, Azar sought money damages, attorneys' fees and costs, and "all other equitable relief." Id. at 8, 10-11, 13, 15-16.

In October 2009, the district court granted National City's motion to dismiss the second amended complaint for failure to state a claim pursuant to Rule 12(b)(6). R3-74 at 9. The court dismissed the breach of fiduciary duty claim in count five because the allegations only established "an arms-length, lender-borrower relationship" under which National City did not owe any fiduciary duties to Azar. Id. at 5. The court also dismissed Azar's claim in count four that National City acted negligently by failing to follow sound banking practices in processing his loans. Id. at 5-7. Finally, the court analyzed Azar's remaining fraud claims in counts one through three, which the court described as "essentially one claim, the crux of which is [Azar's] contention that he was misle[d] by the bank into accepting a larger loan than he could repay." Id. at 8. The court noted that the only false statement alleged in Azar's complaint concerned National City's statement on the loan applications that Azar's income was three times higher than the actual amount. Id. The court found that this misrepresentation was intended to

4

induce the <u>lender</u> to loan Azar money, not to induce Azar to borrow money. <u>Id.</u> at 8-9. Consequently, the court concluded that Azar's fraud claim failed. <u>Id.</u> at 9. The court further reasoned that Azar could not have relied on this misrepresentation because Azar would have known the true amount of his own income. <u>Id.</u> Additionally, Azar could not claim reliance because, as he admitted in his amended complaint, he was unaware that his income had been falsified. <u>Id.</u> The court therefore dismissed his fraud claims with prejudice based on Azar's failure to state a viable claim. <u>Id.</u>

Azar then filed a motion to alter the court's order pursuant to Federal Rule of Civil Procedure 59. R3-77. He requested that he be allowed to file a third amended complaint so that he could replead his claims of fraudulent inducement and fraudulent misrepresentation, and add new causes of action for negligent misrepresentation and breach of contract. <u>Id.</u> at 1. On 10 November 2009, the court denied his motion as "frivolous." R3-79 at 3.

National City subsequently moved for $48,648.30 in attorneys' fees and $357.60 in costs. R3-75 at 5. Azar did not object to the hourly fees and only opposed $14,795.80 in fees associated with legal research and conferences. R3-82 at 2-3. The district court found no support for Azar's objection and granted the motion for $49,005.90 in attorneys' fees and costs. R3-83 at 2.

Azar appeals from the final judgment in the case as well as the order denying his motion to alter or amend the judgment.  R3-85.  Specifically, Azar contends the district court erred in dismissing with prejudice his claims in count two of fraudulent inducement, and his claims in count three of negligent misrepresentation, which he states were erroneously labeled as "fraudulent misrepresentation."[3]  Azar further submits that the award for attorneys' fees should be vacated because National City did not attempt to enforce the mortgage, and because the award is unreasonable and excessive.

## II.  DISCUSSION

A.  Dismissal of Fraudulent Inducement and Negligent Misrepresentation Claims

"We review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6)."  Redland Co. v. Bank of Am. Corp., 568 F.3d 1232, 1234 (11th Cir. 2009) (per curiam).  To withstand a motion to dismiss, a complaint must state a "plausible" claim for relief.  Ashcroft v. Iqbal, 556 U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009).  This requires sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[3] In his reply brief, Azar further argues that his complaint established a fiduciary duty, contrary to the district court's determination.  To the extent that Azar is challenging the district court's dismissal of his breach of fiduciary duty claim in count five, we will not address it because Azar failed to raise this issue in his initial appeal brief.  See United States v. Valladares, 544 F.3d 1257, 1269 n.2 (11th Cir. 2008) (per curiam) ("'[A]n appellant may not raise an issue for the first time in a reply brief.'").

alleged." Id. at ___, 129 S. Ct. at 1949.  Although we must accept all factual allegations in the complaint as true, we need not apply this rule to legal conclusions.  Id. at ___, 129 S. Ct. at 1949.  Furthermore, the factual allegations must go beyond "naked assertions" and establish more than "a sheer possibility" of unlawful activity.  Id. at ___, 129 S. Ct. at 1949 (quotation marks, alteration, and citation omitted).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).

We also review de novo a district court's determination and application of state law in a diversity case.  See Gen. Am. Life Ins. Co. v. AmSouth Bank, 100 F.3d 893, 897 (11th Cir. 1996).  Finally, we review a district court's denial of a Rule 59 motion for an abuse of discretion.  Drago v. Jenne, 453 F.3d 1301, 1305 (11th Cir. 2006).

1.  Fraudulent Inducement

Azar first argues that the district court erred in dismissing his claim of fraudulent inducement in count two.  According to Azar, the district court ignored the misrepresentation of fact that he alleged in his complaint – namely, that Azar "qualified" for the loans and met underwriting standards for loan approval.  Azar contends this misrepresentation of fact induced him to take the loans, on the belief

7

that National City had determined he could afford to repay the loans and was willing to incur the risk of such loans.

Because this is a diversity jurisdiction case, we apply the substantive law of the state in which the case arose. Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1132 (11th Cir. 2010). To state a claim for fraudulent inducement under Florida law, Azar's complaint must allege sufficient facts showing that: (1) National City made a false statement concerning a material fact; (2) National City knew the misrepresentation was false; (3) National City intended the misrepresentation to induce Azar's reliance; and (4) Azar was injured by his reliance on the misrepresentation. See Thompkins v. Lil' Joe Records, Inc., 476 F.3d 1294, 1315 (11th Cir. 2007); Biscayne Inv. Group, Ltd. v. Guarantee Mgmt. Servs., Inc., 903 So. 2d 251, 255 (Fla. Dist. Ct. App. 2005). The first factor generally requires that the false statement is about a past or existing fact, not merely an opinion. See Mejia v. Jurich, 781 So. 2d 1175, 1177 (Fla. Dist. Ct. App. 2001). An exception to this rule applies, however, "[w]here the person expressing the opinion is one having superior knowledge of the subject of the statement and . . . knew or should have known from facts in his or her possession that the statement was false." Id. Under those circumstances, "the opinion may be treated as a statement of fact." Id.

Here, the district court correctly found that Azar failed to plead a plausible claim of fraudulent inducement. Azar contends that, by approving his loans, National City misrepresented that he "qualified" for the loans and met underwriting standards. The mere fact that his loans were approved, however, does not constitute a false statement of fact. Otherwise, every loan approval could potentially result in a claim for fraudulent inducement. Likewise, Azar's personal belief that the loan approvals meant the bank believed he could repay the loan does not constitute a misrepresentation of fact that was made by National City. Even if National City employees had told Azar that they believed he could repay the loan, such a statement is merely an opinion, which cannot support a cause of action for fraud. See Thompson v. Bank of New York, 862 So. 2d 768, 770-771 (Fla. Dist. Ct. App. 2003) (per curiam) (explaining that whether a borrower could afford a loan was an opinion involving more facts available to the borrower than the seller). Nor does this case fall into the exception for opinions. See Mejia, 781 So. 2d at 1177. Even though the bank employees had access to certain financial documents of Azar's, Azar did not allege that National City had superior knowledge of his financial status or that it knew his business would continue to decline, which is the reason Azar alleged he could not make his mortgage payments.

The only false statement identified in count two of his complaint was

9

National City's falsification of Azar's income on his loan applications. We agree with the district court that this misrepresentation, even if true, reflects an intent to induce the lender to grant the loan, not to entice Azar to take the loan. The only evidence of inducement in Azar's complaint is his bare allegation that National City would financially benefit from loaning the money to him. Not only is this assertion devoid of any factual support, but it defies common sense to believe that a bank would profit from loaning money to someone it knows cannot repay it. Although Azar suggests on appeal that the bank employees would receive commissions and additional money from making the loans, he did not make this allegation in his complaint. Accordingly, we conclude that Azar's factual allegations of fraudulent inducement are insufficient "to raise a right to relief above the speculative level" and were thus properly dismissed pursuant to Rule 12(b)(6). Twombly, 550 U.S. at 555, 127 S. Ct. at 1965.

2. Negligent Misrepresentation

Azar next argues that the district court erred in dismissing his claim in count three of negligent misrepresentation. Azar acknowledges that count three was entitled "fraudulent misrepresentation," but he submits, for the first time on appeal, that this was a labeling error. He contends that count three alleged sufficient facts to satisfy the cause of action for negligent misrepresentation. Specifically, Azar

10

reasserts his allegation that National City employees misrepresented to him that he qualified for the loans and met underwriting standards.

Absent special circumstances, it is well established that we will not consider an issue raised for the first time on appeal. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1331-32 (11th Cir. 2004). The special circumstances under which we have considered a newly-raised issue are: (1) the issue involves a pure question of law and the refusal to consider it would result in a miscarriage of justice; (2) the appellant had no opportunity to raise the issue in the district court, (3) substantial justice is at stake; (4) the proper resolution of the issue is beyond any doubt; and (5) the issue involves "significant questions of general impact or of great public concern." Id. at 1332 (quotation marks and citation omitted). While we generally construe pleadings liberally for a pro se litigant, we cannot do so here because Azar is a licensed attorney. See Olivares v. Martin, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977).

Our review of the record reflects that Azar did not argue in the district court that count three was mistakenly entitled fraudulent misrepresentation as opposed to negligent misrepresentation. To the contrary, he consistently maintained that his complaint satisfied the elements of fraudulent misrepresentation. Even in his Rule 59 motion, Azar requested that he be allowed to replead his claim of fraudulent

11

misrepresentation and plead "*new* causes of action" for negligent misrepresentation and breach of contract.[4]  R3-79 at 1 (emphasis added).  In light of Azar's failure to raise this issue in the district court and the absence of any exceptional circumstances, we decline to consider this issue on appeal.  See Access Now, 385 F.3d at 1331.

B.  Attorneys' Fees

1.  National City's Contractual Right to Fees

Azar argues that National City had no contractual right to attorneys' fees.[5] He contends that National City incurred its fees as a result of responding to Azar's allegations of tortious wrongdoing before the note was executed, not as a result of enforcing the note.  Moreover, he submits that the fact that he sought rescission and cancellation of the note and mortgages does not preclude the underlying tort action.

We review the district court's decision to grant attorneys' fees for an abuse

---

[4] Azar argues in his reply brief that the district court should have allowed him to amend his complaint to plead both negligent and fraudulent misrepresentation.  This was not the argument that Azar made in his initial brief and it is therefore precluded from review.  See United States v. Valladares, 544 F.3d 1257, 1269 n.2 (11th Cir. 2008) (per curiam).

[5] Azar also contends that National City was not entitled to costs under the contractual provisions.  However, he did not object in the district court to the $357.60 of costs incurred by National City, and the Clerk entered a bill of costs in this amount.  See R3-83 at 2 n.3.  As Azar did not raise this issue in the district court, we will not consider it on appeal.  See Access Now, 385 F.3d at 1331.

of discretion, reviewing legal questions <u>de novo</u> and factual findings for clear error. <u>Bivens v. Wrap It Up, Inc.</u>, 548 F.3d 1348, 1351 (11th Cir. 2008) (per curiam). We apply state law in determining the meaning of a contractual attorney fee provision. <u>See</u> <u>Sure-Snap Corp. v. State of Vermont</u>, 983 F.2d 1015, 1017 (11th Cir. 1993).

Florida law requires each party to pay for its own attorneys' fees unless a contract or statute otherwise provides. <u>Price v. Tyler</u>, 890 So. 2d 246, 251 (Fla. 2004). In <u>Caufield v. Cantele</u>, 837 So. 2d 371, 378 (Fla. 2002), the Florida Supreme Court considered a contractual provision that allowed fees to be awarded to the prevailing party "in connection with any litigation arising out of the contract." The Florida Supreme Court held that tortious "claims of fraudulent misrepresentation concerning the subject matter of the contract do 'arise out of the contract.'" <u>Caufield</u>, 837 So. 2d at 378. Consequently, the court concluded that the prevailing-party provision should apply. <u>See</u> <u>id.</u> at 379.

A Florida appellate court subsequently clarified that "<u>Caufield</u> was based on a misrepresentation which occurred before the making of the contract." <u>Broward Marine, Inc. v. Palm Beach Polo Holdings, Inc.</u>, 902 So. 2d 855, 857 (Fla. Dist. Ct. App. 2005). Similar to <u>Caufield</u>, the plaintiffs in <u>Broward</u> alleged that fraudulent misrepresentations had occurred before the parties entered into the contract. <u>Id.</u> at

13

855-56. The plaintiffs sued on a theory of fraudulent inducement, seeking rescission of the contract and damages. See id. The defendants prevailed, and the trial court awarded them attorneys' fees under the prevailing party provision of the contract. Id. at 856. The court held that Caufield required an award of attorneys' fees under these circumstances. Id. at 857.

The rationale of Caufield and Broward apply with equal force here. As in those cases, National City's fraudulent misrepresentations allegedly induced the contracts or loans at issue. Thus, contrary to Azar's contention, the fact that he has asserted a tort claim of fraudulent inducement does not preclude application of the contractual provisions for attorneys' fees. See Broward, 902 So. 2d at 855-57. Here, the contractual provisions primarily refer to costs and fees associated with enforcing the loans.[6] The record supports the district court's finding that National City's "actions were clearly taken in furtherance of its right to enforce [Azar's] payment obligation." R3-83. Among the relief requested in Azar's complaint was

---

[6] National City relied upon three different contractual provisions providing for recovery of attorneys' fees. Under the default terms of the June 2007 mortgage, if a mortgagor defaulted on the note, the lender was entitled "to enforce the Mortgage by a judicial sale of the Property to pay the balance of the secured indebtedness plus reasonable attorney's fees, costs and expenses to the maximum extent permitted by law." R3-75, Exh. 1 at 2. The terms of the January 2006 note granted the lender "the right to be paid by [Azar] for all of its costs and expenses in enforcing this Note . . . Those expenses include, for example, reasonable attorneys' fees." Id. at Exh. 2 at 2. Finally, the June 2007 equity reserve agreement provided that if Azar did not meet the repayment terms of the agreement, National City "shall be entitled to reasonable court costs and attorneys' fees for independent counsel that [it] hires." Id. at Exh. 3 at 3.

14

the rescission and cancellation of his mortgage, and an injunction to prevent National City from foreclosing on his residence based on his default of the mortgage and equity loans. Had Azar succeeded in obtaining this relief, National City would have lost the right to collect on its loans. Consequently, National City was required to defend against Azar's claims in order to enforce those loans. The district court therefore did not abuse its discretion in awarding attorneys' fees to National City under the contractual provisions of the mortgage, note, and equity line of agreement.

2. Reasonableness of Award

Last, Azar argues that the attorneys' fees awarded were unreasonable and excessive because only a small portion of National City's pleadings were directed at the defense or enforcement of the note or mortgage.

Once again, Azar raises an issue on appeal that was not presented to the district court. Azar's sole objection to the reasonableness of the fees was that reimbursement for research and conferences was "not fair nor equitable." R3-82 at 2. Azar expressly did not object to the hourly fees charged by National City's attorneys. Nor did Azar raise the argument he now presents on appeal – that the fees are unreasonable because National City only expended a limited amount of time in defending or enforcing the loans. Consequently, we decline to consider

15

this argument on appeal.  See <u>Access Now</u>, 385 F.3d at 1331.

### III.  CONCLUSION

Based on the foregoing, we AFFIRM the district court's dismissal of Azar's claims in his second amended complaint and we also AFFIRM the award of attorneys' fees and costs to National City.

**AFFIRMED.**