Eric BELANGER, Plaintiff,

v.

BAC HOME LOANS SERVICING, L.P., Defendant.

Civil Action No. W–11–CA–00086.

United States District Court,
W.D. Texas,
Waco Division.

Dec. 9, 2011.

Bernard J. Grant, Chad A. Norcross, Norcross Law, Dallas, TX, for Plaintiff.

C. Charles Townsend, Elizabeth Austin Mazzarella, Michael J. McKleroy, Jr., Akerman Senterfitt, LLP, Dallas, TX, for Defendant.

## ORDER

WALTER S. SMITH, JR., District Judge.

Before the Court is the Motion for Summary Judgment filed by the Defendant, BAC Home Loans Servicing, L.P. (BAC). Having considered the motion, the response, the reply, and the applicable legal authority, the Court finds that the motion is partially meritorious and should be granted in part and denied in part.

## I. Statement of Facts

In accordance with standard summary-judgment practice, the Court recounts the relevant facts in the light most favorable to the non-movant, Eric Belanger, and makes all justifiable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In December 2006, Belanger applied for loan from Countrywide Home Loans, Inc. (Countrywide) to finance the purchase of real property in Somervell County, Texas. During the application process, Countrywide obtained Belanger's paycheck stubs and bank statements in order to calculate his income. Those records indicated that Belanger earned approximately $2800 per month. Nevertheless, in the loan documents, Countrywide stated that Belanger's monthly income was $5142. Based on this inflated estimate,[1] Countrywide approved Belanger for a loan of $97,850. Belanger signed a promissory note, which was secured by a deed of trust on the purchased property.

During the next four years, Belanger missed his loan payments and flirted with foreclosure. In 2008, Countrywide transferred the note to BAC. In February 2010, Belanger did not receive a monthly statement, so he refused to make his payment. BAC notified him in March that the property would be foreclosed. The foreclosure sale did not occur, so Belanger began to doubt that BAC actually held his note. In September 2010, he sent BAC a regular monthly payment along with a demand that BAC produce the original promissory note. When BAC did not respond, Belanger ceased making payments. Consequently, the property was again scheduled for foreclosure.

On April 5, 2011, Belanger sued BAC in Texas state court, alleging "predatory lending," unconscionability, simple and gross negligence, and common-law fraud. He also sought declaratory relief, to quiet title to the property, and a temporary restraining order (TRO) to prevent BAC from proceeding with the foreclosure sale. The state court granted the TRO. BAC then removed the case to this Court. It now moves for summary judgment on all of Belanger's claims.[2]

## II. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R.Civ.P. 56(a). The court should grant summary judgment if, after an adequate time for discovery, the non-movant fails to make a sufficient showing of an essential

---

1. BAC contends that Countrywide's estimate of $5142 per month was accurate according to Belanger's financial records. Belanger, however, claims that he "did not make near this amount." *See* Ex. C to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 2. Because Belanger's statement of his own income is at least some evidence, this factual dispute will be resolved in his favor.

2. BAC also filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which raised arguments largely duplicative of those raised in the motion for summary judgment.

element of his case with respect to which he bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant must initially demonstrate the lack of evidence supporting the non-movant's case. *See id.* The burden then shifts to the non-movant to present some evidence showing that there is a genuine issue for trial. *See id.* at 324, 106 S.Ct. 2548.

To survive a motion for summary judgment, the proffered fact issues must be material and subject to a genuine dispute. Material facts are those that have the potential to affect the outcome under the governing law. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Moreover, a "dispute about a material fact is genuine ... if the evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Id.* In making this determination, the court may not weigh the evidence or evaluate the credibility of the witnesses. *See id.* at 255, 106 S.Ct. 2505. Instead, it must view all facts in the light most favorable to the non-movant and make all justifiable inferences in his favor. *See id.*

## III. Analysis

Here, BAC is entitled to judgment as a matter of law on Belanger's tort claims and his suit to quiet title to the property. Belanger, however, may have a viable defense (unconscionability) to the foreclosure of his property, and summary judgment is inappropriate on that claim.

### A. *"Predatory Lending"*

■ Belanger's first claim—predatory lending—can be dismissed with dispatch. No Texas court has recognized an independent cause of action for "predatory lending." *See, e.g., Brown v. Aurora Loan*

*Servs., LLC,* No. 4:11CV111, 2011 WL 2783992, at *4 (E.D.Tex. June 7, 2011); *Smith v. Nat'l City Mortg., USA,* No. A–09–CV–881, 2010 WL 3338537, at *13 (W.D.Tex. Aug. 23, 2010). Additionally, Belanger has not argued that the Texas Supreme Court would allow borrowers to recover for "predatory lending" if presented with the question. Indeed, he has not even identified the essential elements of a "predatory lending" claim. *See* Pl.'s Original Pet. at 4 ("Predatory lending is a term that encompasses may different types of abusive actions by loan originators to secure loans. There is no certain set of elements to a predatory lending claim."). Therefore, because Belanger has not shown that it is a recognized cause of action in Texas, BAC is entitled to summary judgment on the "predatory lending" claim.

### B. *Negligence and Gross Negligence*

■ In his second claim, Belanger seeks to hold BAC liable for Countrywide's negligence in approving the loan without securing accurate financial information. He also alleges that BAC itself was negligent, because it failed to produce the original promissory note and send monthly statements. BAC is entitled to summary judgment on both theories of negligence liability.

First, Belanger has not shown that BAC can be held responsible for Countrywide's negligence in approving the loan. The only connection between BAC and Countrywide is the transfer of the promissory note. However, Belanger has not cited any Texas case, and this Court has found none, stating that a transferee of a note is vicariously liable for the transferor's torts. Indeed, many courts from other jurisdictions have held precisely the opposite. *See, e.g., Araki v. Bank of Am.*, Civil No. 10–00103, 2010 WL 5625970, at*6 (D.Haw.

Dec. 14, 2010) (holding that "there is no liability under [the Hawai'i Deceptive Practices Act] merely because one is an assignee"); *Stoudt v. Alta Fin. Mortg.,* Civil Action No. 08–CV–2643, 2009 WL 661924, at \*2 (E.D.Pa. Mar. 10, 2009) (stating that "affirmative claims of fraud and violation of consumer protection laws ... are inappropriate to assert against an assignee where there are no allegations that the assignee had any contact with the mortgagor or made any representations to the mortgagor and the factual basis for the claims occurred prior to assignment of the mortgage"); *Skinner v. Preferred Credit,* 172 N.C.App. 407, 616 S.E.2d 676, 681 (N.C.Ct.App.2005) (holding that the assignee of mortgages and mortgage notes was not liable to the mortgagors for unfair or deceptive trade practices relating to allegedly excessive loan origination fees and interest rates, where the assignee had no connection to the execution of the notes). Therefore, because Belanger has failed to present any evidence showing that BAC was involved in the origination of his loan, summary judgment is appropriate.

 Furthermore, to the extent that Belanger's negligence claim rests on BAC's own conduct, it runs afoul of the economic-loss rule. A legal duty is the *sine qua non* of common law negligence. *See W. Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005). To determine which duty, if any, was breached by the defendant, the Texas courts look to the nature of the plaintiff's injury. *See Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986). When the plaintiff's only harm is an economic loss caused by the defendant's failure to perform a contract, the defendant has breached a contractual duty, not a tortious one. *See id.* Therefore, the Texas courts have held that a plaintiff cannot recover on a negligence claim "[w]hen the injury is only the economic loss to the subject of the contract itself."

*See id.; see also Express One Int'l Inc. v. Steinbeck,* 53 S.W.3d 895, 899 (Tex.App.-Dallas 2001, no pet.) ("To be entitled to damages for negligence, a party must plead and prove either a personal injury or property damages as contrasted to mere economic harm.").

The economic-loss rule bars Belanger's negligence claim here. Belanger and BAC's relationship is based on the promissory note and the attendant deed of trust. Any obligation that BAC had to produce the original promissory note or send monthly statements arose solely from its contractual relationship with Belanger. *See Wells v. BAC Home Loans Servicing, L.P.,* Civil No. W–10–CA–00350, 2011 WL 2163987 (W.D.Tex. Apr. 26, 2011) (holding that Texas law does not require production of the original promissory note). Moreover, the only damages claimed by Belanger are the increased costs of borrowing. He contends that the delinquency and possible foreclosure of his property will damage his credit score, and, consequently, he will have difficulty obtaining loans and favorable interest rates. He does not allege that BAC caused any personal injury or property damage. Therefore, because Belanger has only claimed economic loss caused by BAC's failure to perform its contractual obligations, the economic-loss rule bars his negligence claim.

*Blanche v. First Nationwide Mortgage Corp.,* 74 S.W.3d 444 (Tex.App.-Dallas 2002, no pet.), supports that conclusion. In that case, the mortgage company wrongfully reported that the Blanches were delinquent on their mortgage payments. *See id.* at 449. Because of the incorrect reports, other lenders either denied the Blanches credit or gave them unfavorable credit terms. *See id.* at 450. The Blanches sued the mortgage company for negligence, but the trial court granted summary judgment based on the economic-loss rule. *See id.* The court of appeals

affirmed, stating that the Blanches "must plead and prove something more than economic harm." *See id.* at 453. "[T]he denial of various loans and the payment of higher interest rates ... are not recoverable in a simple negligence action." *Id.*

Because Belanger seeks the same type of damages—compensation for the denial of loans and higher interest rates—in his negligence claim, *Blanche* is controlling, and BAC is entitled to summary judgment.

### C. Fraud

■ In his third claim, Belanger alleges that Countrywide committed fraud by intentionally overstating his income in the loan application documents. BAC argues that this claim is time-barred; Belanger argues that the discovery rule should toll the statute of limitations. BAC is entitled to summary judgment on the fraud claim, albeit for a different reason. *See United States v. Hous. Pipeline Co.*, 37 F.3d 224, 227 (5th Cir.1994) ("[T]he judge is free to grant summary judgment on the basis of any facts shown by competent evidence in the record ...." (quoting *Daniels v. Morris*, 746 F.2d 271, 276 (5th Cir.1984))).

■ Even if the Court were to assume that BAC could be held liable for Countrywide's tortious conduct, Belanger has not presented sufficient evidence of fraud. To prevail on a fraud claim, the plaintiff must establish that: (1) the defendant made a material representation that was false; (2) the defendant either knew that the representation was false or made it recklessly without knowledge of its truth; (3) the defendant intended to induce the plaintiff to act on the representation; and (4) the plaintiff actually and justifiably relied upon it, suffering injury. *See Ernst & Young, LLP. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex.2001). Here, Belanger cannot satisfy the third and fourth elements.

First, no evidence suggests that Countrywide intended to induce Belanger to act based on its inflated estimate of his income. The falsification of a borrower's income reflects an intention to induce the lender to grant the loan, not to entice the borrower to accept it. *See Azar v. Nat'l City Bank*, 382 Fed.Appx. 880, 885 (11th Cir.2010) (per curiam). Furthermore, Belanger has not explained why Countrywide would attempt to induce him to accept a loan for which he was not qualified. The Court cannot infer that Countrywide would financially benefit from the transaction, as "it defies common sense to believe that a [lender] would profit from loaning money to someone it knows cannot repay it." *See id.*

In addition, Belanger cannot show that he actually relied on Countrywide's inflated estimate of his income. To establish fraud, the plaintiff must prove that he actually relied on the defendant's misrepresentations. *See Morgan v. Amarillo Nat'l Bank*, 699 S.W.2d 930, 937 (Tex. App.-Amarillo 1985, writ ref'd n.r.e.). If the misrepresentation played no part in the plaintiff's actions, fraud does not exist. *See id.* Here, Countrywide's estimate of Belanger's income did not prompt him to accept the loan, because Belanger concedes that he was unaware of the estimate until five years later. In his response to the motion for summary judgment, Belanger states that "[t]he specific attributes of predatory lending, of which [Belanger] was informed as it pertained to the discovery of the manipulation of [his] stated income, became known to [Belanger] on or around March 31, 2011, when [he] hired counsel in the case at bar." *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at 8. Because a person cannot rely on information that he does not know, no reasonable and fair-minded jury could find that Belanger actually relied upon Countrywide's misstatement of his income. *See Sarratt v. Alamo Square, Inc.*, No. 07–95–0356–CV, 1997 WL 271702, at *3 (Tex.App.-Amarillo 1997, no

pet.) ("Logically, one must first know of the falsehood before he can rely upon it.").

■ Moreover, even if Belanger did rely on Countrywide's statement, that reliance was not justified. A plaintiff cannot justifiably rely upon the defendant's misrepresentation if both parties are "equally cognizant of the facts." *See Roan v. Reynolds*, 364 S.W.2d 763, 766 (Tex.Civ. App.-Amarillo 1963, no writ); *Williams v. Dardenne*, 345 S.W.3d 118, 126 (Tex.App.-Houston [1st Dist.] 2011, pet. filed) ("[A] party who has actual knowledge of specific facts cannot have [justifiably] relied on a misrepresentation of the same facts."). Here, Belanger was aware of his own monthly income. Countrywide did not know anything more or different about Belanger's financial status. In fact, Countrywide's knowledge was based exclusively on records, such as paycheck stubs and bank statements, that Belanger had provided. Therefore, because Countrywide and Belanger were both aware of the same financial information, any reliance on Countrywide's estimate of income would not have been justified. Accordingly, BAC is entitled to judgment as a matter of law on Belanger's fraud claim. *See Yaldu v. Bank of Am. Corp.*, 700 F.Supp.2d 832, 844 (E.D.Mich.2010) (dismissing a fraud claim based on a lender's misrepresentation of the borrower's salary); *Azar v. Nat'l City Bank*, No. 6:09–CV–400–Orl–31KRS, 2009 WL 3668460, at *4 (M.D.Fla. Oct. 26, 2009) (same), *aff'd*, 382 Fed.Appx. 880 (11th Cir.2010) (per curiam).

### D. Suit to Quiet Title

Finally, Belanger seeks to quiet title in his favor, arguing that any interest that BAC claims in the property is "invalid and unenforceable as it violates the Texas Constitution, Article XVI, Section 50(a)(6)."

BAC is entitled to summary judgment on this claim as well.

■ First, Belanger has not presented any evidence that the Texas Constitution is implicated in this case. Section 50(a)(6) of Article XVI sets forth the requirements for an enforceable home equity loan secured by a lien on the debtor's homestead. Tex. Const. art. XVI, § 50(a)(6); *LaSalle Bank Nat'l Ass'n v. White*, 246 S.W.3d 616, 618 (Tex.2007) (per curiam). However, Belanger's lien does not fall within the scope of the constitutional provision. His lien was a purchase-money lien, not a home-equity lien. The deed of trust, which Belanger signed, expressly states that "[t]he Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6)." *See* Ex. A–2 to Def.'s Mot. for Summ. J. at 11. Thus, Countrywide and BAC were not required to satisfy the constitutional requirements.

Furthermore, even if Section 50(a)(5) did apply to Belanger's loan, any failure to comply would be barred by limitations four years following the closing of the loan. *See Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 840 (Tex.App.-Dallas 2008, no pet.). Here, Belanger closed his loan on December 6, 2006, and the statute of limitations expired on December 6, 2010. Because Belanger did not file suit until April 2011, his claim is time-barred.

### E. Unconscionability

In addition to his tort claims and his suit to quiet title, Belanger has pled unconscionability and claims that it "forms the basis of a defense to a contract formed fraudulently." Because BAC has not asserted any breach-of-contract claims, the Court assumes that Belanger is raising unconscionability as defense to the foreclosure of his property.[3] *See* Pl.'s Original

---

**3.** Because BAC does not argue otherwise, the Court assumes, without deciding, that the un-

conscionability of the underlying loan agree-

Pet. at 7 (arguing that "the foreclosure should be set aside because the actions taken by [BAC] are unconscionable").

▇▇▇▇ The party raising an unconscionability defense must plead and prove both procedural and substantive unconscionability. *Ski River Dev., Inc. v. McCalla,* 167 S.W.3d 121, 136 (Tex.App.-Waco 2005, pet. denied). Procedural unconscionability focuses on the facts surrounding the bargaining process. *See Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 821 (Tex.App.-San Antonio, no writ). "Factors that may contribute to an unfair bargaining process include: (1) knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; and (2) knowledge of the stronger party that the weaker party is unable reasonably to protect his interests...." *McCalla,* 167 S.W.3d at 136. Moreover, substantive unconscionability focuses on the agreement itself and the commercial reasonableness of its terms. *See Morris,* 921 S.W.2d at 821. "The test for substantive unconscionability is whether, 'given the parties' general commercial background and the commercial needs of a particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract.'" *See In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 678 (Tex.2006) (quoting *In re FirstMerit Bank,* 52 S.W.3d 749, 757 (Tex. 2001)).

▇▇▇▇ In response to the unconscionability defense, BAC presents two arguments. First, documentary evidence shows that Countrywide did not manipulate Belanger's income during the loan application process. Second, Belanger cannot prove substantive unconscionability, because "there was no disparity between the value

ment would be a valid defense to a non-

received by Belanger—the loan of $97,-850—and his return promise—his obligation to repay that loan."

Neither of these arguments demonstrates that BAC is entitled to judgment as a matter of law. The first merely shows a factual dispute, which this Court cannot resolve on summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences drawn in his favor."). The second argument rests on an overly simple description of a loan agreement. A borrower does not merely promise to repay the loan; he promises to repay according to a litany of terms and conditions. For instance, the loan agreement may set an interest rate, specify whether the interest rate is fixed or variable, or require the borrower to insure the collateral. Those terms and conditions of repayment may become so oppressive and onesided that they are unconscionable. Accordingly, the Court cannot say that BAC has conclusively disproved Belanger's unconscionability defense.

## IV. Conclusion

BAC is entitled to summary judgment on Belanger's tort claims—"predatory lending," negligence, and fraud—and his suit to quiet title. However, it has not shown, as a matter of law, that Belanger cannot maintain his unconscionability defense. Thus, Belanger's defense and his request for declaratory relief will survive the motion. Accordingly, it is

**ORDERED** that the Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART.**

Furthermore, before moving for summary judgment, BAC filed a motion to

judicial foreclosure.

dismiss for failure to state a claim upon which relief can be granted. The Court has not ruled on the motion, but its arguments are identical to those raised in the summary-judgment motion. Accordingly, it is

**ORDERED** that the Motion to Dismiss is **DENIED** as moot.